## ALASKA PACIFIC FISHERIES v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   January 3, 1921.)

No. 3491.

Criminal law ⬤══603 (7)—Discretionary power not abused in denying continuance.

In a prosecution for unlawfully fishing in Alaskan waters, the trial court did not abuse its discretion in denying a continuance, where defendant's affidavit alleged that its president, who was unable to be present at trial, alone had complete knowledge of the facts, and that it would interrupt defendant's business operations to produce the men who actually operated the traps involved, but did not state to what facts the president could testify, and none of the employees mentioned testified.

In Error to the District Court of the United States for Division No. 1 of the District of Alaska; Robert W. Jennings, Judge.

The Alaska Pacific Fisheries was convicted of unlawfully fishing in Alaskan waters, and brings error.   Affirmed.

Hellenthal & Hellenthal, of Juneau, Alaska, for plaintiff in error. James A. Smiser, U. S. Atty., of Juneau, Alaska.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge.   The plaintiff in error corporation was tried and convicted under counts IX, X, XI, XIII, and XIV of an indictment charging it with unlawfully fishing in the waters of Alaska, over which the United States has jurisdiction, and within the First division of that territory, without having the tunnel of its traps—

"closed and without having 25 feet of the webbing or net of the heart of such trap on each side next to the pot thereof lifted or lowered in such manner as to permit the free passage of salmon and other fishes."

The indictment was returned into the court below September 12, 1918, to which the defendant appeared by its attorneys and filed a demurrer, which was by the court overruled on the 24th of the same month, whereupon the defendant pleaded not guilty, and on the same day an order was entered setting the case for trial, "to follow cause No. 1307–B of the regular trial calendar."   After the 24th day of September, 1918, the bill of exceptions recites:

"The case was not again called during the term on account of want of time to try it, and the cause passed over until April 18, 1919, on which date an order was entered setting said cause for trial on June 9, 1919.   On June 9, 1919, the cause was not taken up on account of other business in which the court was engaged, and said cause was passed and not taken up again until June 14, 1919, on which date the defendant filed a motion for a continuance, and the case was passed until June 16, 1919, on which date another affidavit in support of its motion for a continuance was filed by O. F. Burckhardt, and in reply thereto there was filed on behalf of the United States the affidavit of Ernest P. Walker and the affidavit of James A. Smiser, United States Attorney."

In each of the counts of the indictment above mentioned, the unlawful fishing is alleged to have been done "between the hours of 6 o'clock post meridian on Saturday, August 17, 1918, and 6 o'clock

⬤══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ante meridian on Monday, August 19, 1918," in certain designated waters, in and by means of a designated and numbered trap with the defects already specified. The record shows that the indictment originally contained 10 other similar counts, all of which were dismissed on motion of the United States attorney when the case came on for trial.

To the affidavit of the United States Attorney was annexed a copy of a letter that the affiant states he received from H. M. Smith, Commissioner of Fisheries, at Washington, D. C., dated March 7, 1919, "inclosing a typewritten copy of a letter from Charles A. Burckhardt, addressed to Henry O'Malley, United States Bureau of Fisheries, Seattle, Washington, and dated January 18, 1919, in regard to the matters and things complained of in the indictment herein," which letter of said Charles A. Burckhardt is as follows:

Alaska Pacific Fisheries.

"Seattle, Wash., January 18, 1919.

"Mr. Henry O'Malley, Field Assistant, U. S. Bureau of Fisheries, Seattle, Wash.—Dear Sir: Inclosed herewith please find copy of indictment returned against our company, 'The Alaska Pacific Fisheries,' by the grand jury of the United States for the District of Alaska, at Juneau, Alaska.

"In this indictment, you will note that we are charged with unlawful fishing our pile traps in the Ketchikan district, as follows: Trap No. 420, on Aug. 4th, 18th, and 25th; No. 418, on Aug. 4th, 18th, and 25th; No. 419, on Aug. 18th and 25th; No. 421, on Aug. 25th. These traps were operated by Chomley cannery.

"I am also inclosing herewith a letter, addressed to me, from our Mr. I. W. Kelly, superintendent of our Chomley cannery, and attached to Mr. Kelly's letter you will find several letters from our employees, all in reference to the above matter. The writer was in charge of Yes Bay cannery this past season, and at no time during the entire season did any one report to me that our traps were not closed satisfactorily; but, on the contrary, the watchman on the traps advised me that the warden had called at our traps and reported everything satisfactory to him.

"It is true that the hearts of our traps were not let down, but we closed the trap entirely by placing an apron at the entrance of the hearts; this effectively closed the same, so that it was impossible for a fish to enter. Our aprons were all 90 feet long, and were hauled down tight and to the bottom, effectively closing the entire entrance to the trap. If this method of closing had not been satisfactory to the warden, I can assure you we would have immediately changed same and complied with his changes, if he had requested any.

"The first knowledge that we had that this method of closing traps was not approved was when we received copy of the inclosed indictment, about September 20th, long after the fishing season. I now realize that our pile traps were not closed according to the letter of the law and that we are guilty of a technical violation. It was, however, not our intention to violate the law in any respect, and we were of the opinion that, when we had effectively closed our traps so they could not catch any fish, we were complying with the law.

"It hardly seems fair to me that we should be prosecuted on these charges, as we certainly did not fish our traps during the closed period, and, as stated before, would have gladly changed the method of closing our traps, if the method we used did not meet with the approval of the bureau. It has always been our policy to co-operate with your bureau and agents, and the records of both our Chomley and Yes Bay canneries will show this to be a fact. The Yes Bay cannery has been in continuous operation since 1906, operated by myself, and Chomley since 1911, under my supervision, and we have never been guilty of any violation of the fishing laws.

"I sincerely trust that you will give this matter your careful consideration, and, if you find the facts as stated herein, that you can conscientiously lay this matter before the honorable commissioner for his consideration.

"Very truly yours,

"CAB/L.                                  [Signed]   C. A. Burckhardt, President."

In support of the motion for the continuance asked for, the affidavit of O. F. Burckhardt was filed, in which he stated in substance that his knowledge of the operations of the business of the defendant company was limited to those in connection with the Chilkoot canneries and that his brother, C. A. Burckhardt, had charge of its operations in connection with the Yes Bay and Chomley canneries of the company; that the affiant was unable to say what C. A. Burckhardt could testify to, if present, and did not know of any person then in Alaska familiar with the facts—

"except the men who are now on the traps themselves, engaged in carrying on the operations, and that these men could not be taken from there and brought to Juneau unless a continuance were had for that purpose, and that it would result in great loss to the Alaska Pacific Fisheries to take these men from their post of duty at the present time, as they are there required to supervise the operations of that business. In this connection affiant avers that he [is] informed and believes that the work at the Chomley cannery is behind, owing to the bad weather, and that it is imperative that those traps be driven at the present time in order to put up the season's pack. Affiant further avers that he does not know to what extent the parties now in charge of the traps would be able to testify in this cause, if present, but knows that no one has a complete knowledge of the facts referred to in the indictment except C. A. Burckhardt; that he is the party who had general supervision and control over the operations; the other men referred to were merely employees under him, who might have knowledge of this or that detail, but who would not have knowledge of the facts as a whole. Affiant further says that it would be necessary for the said C. A. Burckhardt to be present in order to determine what witnesses might be called to prove facts in corroboration of his testimony, or to details not within his knowledge in relation to the matters charged in the indictment; that said C. A. Burckhardt has not been able for some time past to attend to matters of that character, because of the reasons set forth in the original affidavit filed herein."

The first affidavit of O. F. Burckhardt is equally barren of any statement of fact justifying an appellate court in interfering with the discretion of the trial court in denying the motion for a continuance. Not one of the persons shown to be competent to testify to the actual facts concerning the operation of the traps was called on behalf of the plaintiff in error, nor does it appear that any effort whatever was made to procure the attendance of any of them. The circumstance suggested in the affidavit of O. F. Burckhardt that such attendance would have resulted in loss to the defendant company is obviously without any force.

The objections made and exceptions taken to the rulings of the court regarding certain questions to and answers made by some of the witnesses have not, in our opinion, sufficient merit to justify specific reference thereto.

The judgment is affirmed.